(31 Misc. Rep. 234.)

### PRINCE v. SOCIALISTIC CO–OPERATIVE PUB. ASS'N.

(Supreme Court, Appellate Term.   April 16, 1900.)

1. LIBEL—"SCAB."
 An article charging a member of a cigar makers' union with violating its rules in the conduct of his business, and calling him a "scab," is libelous.

2. SAME—EVIDENCE—EFFECT OF CROSS-EXAMINATION.
 Though defendant, in an action for libel in publishing an article charging plaintiff with violating rules of a cigar makers' union, asks plaintiff, on cross-examination, whether there was an investigation of the charge, to which plaintiff answers, "Yes," yet plaintiff cannot, on redirect, in addition to stating that the report of the investigating committee of the union was favorable, introduce the report of such committee.

3. SAME—PUNITIVE DAMAGES.
 To authorize award of punitive damages for libel, it must be found that defendant was influenced by actual malice, or acted wantonly or recklessly in making the charge.

Appeal from city court of New York, general term.

Action by Samuel Prince against the Socialistic Co-operative Publishing Association. From a judgment of the general term of the city court affirming a judgment entered on a verdict rendered in said court for plaintiff (61 N. Y. Supp. 1145), defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GIEGERICH and O'GORMAN, JJ.

Simon Sultan, for appellant.
Morris Cukor, for respondent.

BEEKMAN, P. J.   The defendant is a domestic corporation engaged in the business of publishing a daily newspaper in this city known as the "New Yorker Volkszeitung."   On or about the 5th day of June, 1897, it published in its paper a letter signed "J. Schmied," which in form was addressed to the members of the Cigar Makers' International Union.   This letter was highly depreciatory of the plaintiff, and related to his conduct in the transaction of his business, and with respect to his business, in a manner most injurious to him. It also undoubtedly held him up to public contempt and ridicule. It is necessary only to read the last paragraph of the publication to demonstrate this:

"This tenement-house boss, Prince, and member of Union 251, had the audacity to slander old and reliable members, whom necessity compels to live in tenement houses of their bosses, while he himself runs a tenement-house factory, and as a miserable scab works six days in a shop, and thereby robs other poor devils out of their bread.   Come all and admire this Prince, the representative of the union at the Central Labor Union."

There was some evidence given in the course of the trial with respect to the significance of the word "scab," as used in this letter. Witnesses who were examined upon the subject seem to agree that the word is one of great opprobrium, and indicates a person who is regarded as an outcast, to be shunned by his fellows.   It was unnecessary, however, to have recourse to evidence of that description,

as the term is one of ancient origin in its application to persons of disrepute, as will appear from a reference to the Century Dictionary. Among the definitions of the word "scab" there given, we find the following: "A mean, paltry, or shabby fellow; a term of contempt." And again: "Specifically, in recent use, a workman who is not or refuses to become a member of a labor union, who refuses to join in a strike, or who takes the place of a striker; an opprobrious term, used by the workmen or others who dislike his action."

I think that it is entirely free from doubt that the publication in question was libelous per se, and that the trial court was right in so regarding it. It not only affected the defendant in his business, but it obviously held him up to public contempt and ridicule. Upon the trial of the action, the jury rendered a verdict in favor of the plaintiff, and, a motion for a new trial having been made by the defendant and denied, an appeal was taken from the judgment and said order to the general term of the city court, where both were affirmed, and from such judgment of affirmance the appeal before us has been taken to this court.

There are two questions raised by exceptions which require consideration. The first relates to certain evidence which was received over the objection of the defendant. It appears that after the publication of this letter an investigation was made by a committee of the union to which the plaintiff belonged with respect to certain charges contained in the libel tending to show that the rules of the union had been violated by the plaintiff. The defendant's counsel, upon his cross-examination of the plaintiff, first made reference to this fact by asking whether any investigation was made, to which the plaintiff answered, "Yes;" and further stated that there was an investigation committee at his house, and the question was examined as to whether he was a manufacturer of cigars at the same time that he was in the employment of a certain firm, which was mentioned. On his re-direct examination he was allowed to state that the report of the committee was a favorable one. Subsequently the plaintiff produced the minutes of the committee of investigation, and, having proved them, offered their contents in evidence; whereupon defendant's counsel made the following statement: "Defendant's Counsel: That is subject to my objection and exception. The Court: Yes." The objection and exception referred to appear in the record upon the preceding page, as follows: "Q. What was the report of that committee? A. It is in writing, and in the records of the label committee. Q. What was it? (Objected to. Objection overruled. Exception.)" It was then that the record itself was produced, and formally proven. After the court admitted the evidence, the witness proceeded to read the report; and after a portion of it had been read, which simply stated the appointment of the committee to make the investigation, defendant's counsel interrupted the reading with this statement:

"I desire to put upon the record the grounds of my objection. The grounds of my objection are that this is hearsay evidence, and that we are not bound by any proceedings that were had in the label committee regarding the label of Mr. Prince, and that the evidence is immaterial, irrelevant, and not binding upon the defendant, and I take an exception."

The reading of the minutes then proceeded, and showed that the subcommittee which had been appointed to make the investigation had made a verbal report, and had been instructed to present the same in writing at the next meeting. It is then stated that the subcommittee presented "the following report, which was adopted." The report, which was then read, was as follows:

"New York, June 9th, 1897.

"We, the undersigned committee appointed to investigate the cigar factory of S. Prince, and see if he ran a tenement house, as so reported in the Volkszeitung, beg to make the following report: After visiting said ·cigar factory, found that it was run according to the rules of the label committee, apart from his living apartments, and that said statement, as J. Smit states in the Volkszeitung, is without any foundation."

I think the exception which was taken to the ruling of the court permitting this evidence is well founded. It is claimed on the part of the respondent that because the counsel for the defendant, on his cross-examination of the plaintiff, touched upon the matter of the investigation, the door was opened by him, and that it was proper for the plaintiff to go into the entire subject. This claim is based upon the argument that, as the defendant had brought the matter to the attention of the jury, fairness required that the plaintiff should be allowed to show that the investigation terminated favorably to him, in order to meet any possible impression which might be left upon the minds of the jury that the result of the investigation was otherwise. He relies upon the cases of Van Ingen v. Publishing Co., 156 N. Y. 376, 388, 50 N. E. 979, and McFadden v. Association, 28 App. Div. 508, 51 N. Y. Supp. ·275. But the facts in those cases were quite different, and the rulings there made do not, in my opinion, at all extend to such a case as this.

In the Van Ingen Case the libel did not mention the plaintiff as the person against whom it was leveled, but it appeared that similar charges had been published in the morning papers of the same day; that these articles had been read by the managing editor of the Mail and Express; that he knew to whom they referred, and with that knowledge he published the article in question. It was held that the other articles were admissible in evidence to show that the publication by the defendant was intended to apply to the plaintiff, and would be so understood by the reading public. It seems also to have been held that they were further admissible because the defendant's counsel had, while cross-examining the plaintiff, elicited the fact that articles relating to the same subject had been previously published in the morning papers, his object being to convince the jury that all the injury to the plaintiff's reputation was caused by the publication of the articles contained in those papers, and that the plaintiff then had the right to read these articles in order to enable the jury to determine how far that claim of the defendant was sustained. This case was decided by a bare majority of the court. In the McFadden Case the defendant's counsel, on cross-examination of the plaintiff, proved that she had seen articles in certain other papers similar to the one which contained the libel complained of, and thereupon he offered them in evidence,

and they were read to the jury. Thereafter the plaintiff, under objection, was allowed to testify that those articles were false. It was held that, under these circumstances, the ruling of the court was right. It will be observed, however, that the question of the admissibility of the articles so read was not raised or discussed, and, furthermore, that they were not put in evidence in answer to anything which had been touched upon by the plaintiff, but solely, as was claimed by the counsel for the defendant, to show that the anguish and distress which plaintiff had testified she had suffered did not result, and could not have resulted, entirely from the libel in suit. Further discussion is unnecessary to show the wide difference between these two cases and the one at bar.

In the case before us, all that the defendant elicited from the plaintiff on cross-examination was that there had been an investigation by the committee. He did not inquire as to how the investigation resulted, and the contention that the jury might have inferred that the result was unfavorable to the plaintiff is somewhat strained and fanciful; but, giving counsel for the plaintiff the benefit of such an assumption, it was quite remedied by the testimony given by the plaintiff on the redirect examination, that the outcome of the investigation had been favorable to him. Where was the necessity or propriety, under these circumstances, for admitting the report of the committee, which contained the deliberately expressed judgment of the three men who signed it that the charges contained in the libel were unfounded? That was one of the questions which the jury was to decide, under the justification which had been pleaded by the defendant. The evidence was clearly improper, and highly prejudicial to the defendant. It is true that counsel, in the course of a trial, may, by adopting a certain line of examination, usually in itself improper, foreclose himself from objecting to answering proof which would be otherwise incompetent, and such proof is then admitted because fairness requires it. But this should be allowed with great caution, and only where the conditions plainly exist which justify it. Such is not the case here, and the error which was committed in admitting the evidence complained of is fatal to the judgment.

It is urged that the defendant's counsel failed to present his objection in proper form or at the proper time to make his exception available. I do not think that this contention is a tenable one. It is manifest that both counsel for the plaintiff and the court thoroughly understood the grounds of the objection to the evidence, and the statement which was made of them, when the reading of the minutes of the committee was interrupted for the purpose, fully apprised the court of such grounds, before any of the objectionable matter had got before the jury. Such statement was made and received without protest or objection on the part of the counsel for plaintiff, and was manifestly accepted as supplying a defect in the form of the objection which had been already made.

The remaining question which we have been asked to consider as a ground for reversal arises upon an exception to the charge of the

judge with respect to the allowance of punitive damages.    The portion of the charge thus excepted to reads as follows:

"If you reach the conclusion that the publication was false, but that it was published without malice, you may, notwithstanding that, add, as I have said before, punitive damages or damages by way of punishment. If you reach the conclusion that there was no malice, and that the article was published in good faith and believing it to be true, and that the defendant took all the pains that a reasonable person would have taken to ascertain the truthfulness of the article before publishing it, you may take such facts into consideration on the question of punitive damages. That, in itself, however, is not a justification that relieves you from the consideration of punitive damages, but it may be considered in mitigation of damages, and the amount of mitigation is entirely for you to fix, as well as the amount of damages to be imposed, in any aspect of the case."

The obvious effect of this instruction was to convey to the minds of the jury that, even though they might be satisfied from the proofs that there was no actual malice, and that the libel was not published wantonly or recklessly or without due inquiry, they might still award punitive damages.    There has been much discussion, and perhaps some confusion, in the opinions contained in reported cases, where this subject of punitive damages has been discussed. But I think that there can be little doubt of the fact that the true rule is as stated by Andrews, C. J., in Holmes v. Jones, 147 N. Y. 59, 41 N. E. 409, where he says (page 67, 147 N. Y., and page 411, 41 N. E.):

"The jury may award damages which are merely compensatory, or damages beyond mere compensation, called 'punitive' or 'vindictive' damages, by way of example or punishment, when in their judgment the defendant was incited by actual malice, or acted wantonly or recklessly, in making the defamatory charge."

The right, then, to award damages of this description necessarily depends upon a finding by the jury that the defendant had either been influenced by actual malice towards the plaintiff, or had acted wantonly or recklessly in making the charge;  otherwise, they have no right to award more than compensatory damages.

It is claimed on the part of the counsel for the plaintiff that the exception was not sufficiently definite in its nature to properly advise the court of the insufficiency or error in the charge upon this question.    We are inclined to assent to this, and have only considered the matter because, in view of the fact that there must be a new trial, it seemed desirable to call attention to the proper rule relative to the allowance of vindictive damages.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.